May it please the Court. The district court committed at least two reversible errors. First, by failing to honor its own instructions to Mr. Lambirth as to how he could oppose summary judgment, and second, by failing to consider the specific items of discovery that he sought in his Rule 56F motion. As to the first error, the district court led Mr. Lambirth to believe that he could respond to a summary judgment or by filing a Rule 56F motion. Nothing in the district court's instructions to Mr. Lambirth suggested that he could or was required to do both simultaneously. When Mr. Lambirth filed the Rule 56 motion, Rule 56F motion, following the district court's instructions precisely, the district court nevertheless treated him as having waived opposition to summary judgment, ignored his alternative request for 30 days in which to file an opposition based on evidence already in the record, and entered final judgment in favor of defendants. Counsel, it looked to me like a good 56F motion would have sufficed, a bad one wouldn't. And I could not see why the things that Lambirth wanted the additional time for justified certainly not to the extent of making it an abuse of discretion to deny his 56F motion. Could you tell me exactly what it was that Lambirth wanted that justified a 56F motion, or alternatively, say what it was that Lambirth would have submitted in opposition if only he'd known that he had to submit in opposition? Certainly, Your Honor, although with respect to the argument that the district court contravened the fair notice requirement, I would submit that that inquiry is not necessary, and under this Court's en banc authority in Rand v. Roland, that reversal would be automatic. As to our the second argument, the second basis for error below, that the district court abused its discretion in denying the 56F motion, regardless of the instructions that he gave to Mr. Lambirth initially, first of all, I would submit that the district court abused its discretion by failing even to consider two of the three items of discovery that were sought, and that that also justifies reversal without regard for the merits of the discovery motion. He's objecting to the prison policy that restricts mail between prison inmates. Yes. And he says, I want the union the guard's union contract. Right. Why give him the guard's union contract? And why delay the case while he gets the guard's union contract? The union contract may suggest that the real impetus for the policy that he's challenging is not the security interest. I don't even see how you can draw a distinction. If you have so many guards and so many inmates, then the problem the prison administration faces is, how do you provide security regarding so many inmates with so many guards? And saying that the motivation is to limit the workload of the guards is saying exactly the same thing as the motivation is to provide adequate security involving so many inmates. Well, I think it's a different sort of security interest than what the defendants are asserting on appeal in the district court. The security interest that they're asserting is that there is a gang problem in California prisons, and that presumably allowing letters to be sent from inmates at one institution to another may somehow exacerbate that problem because of the contents of the letter. That's a different security interest than asserting that labor-related workload considerations require this correspondence policy. I don't understand it. It seems to me like the same one. In order to allow the letters to be sent but protect against crimes that are generated by the letters, somebody has to read the letters. An individual can only read so much in so much time. So if your number of guards is limited, your ability to read the letters, decode them, figure out what these people are talking about is limited. Well, first of all, I would submit that what Mr. Lamberth is arguing is not necessarily that there should be prison resources allocated to read every letter and not that every inmate should be entitled to send letters, but rather there should be individualized consideration of an inmate's circumstances to determine whether or not that particular inmate should be allowed to correspond with inmates at other institutions. That's labor-intensive. Does it make any difference, though? Because even if you're correct that this was created by some kind of a labor beef, that in and of itself doesn't sever the common-sense connection, to use our convoluted case law language, between the regulation and a security purpose. Well, it doesn't necessarily sever the common-sense connection between the regulation and a security purpose, but I think that the fact that the defendants would have inconsistent rationales severs the common-sense connection between the regulation and the purpose actually asserted on appeal. Whether there is a legitimate common-sense connection between the regulation and these labor-related security concerns is something that the defendants have never argued and has not been briefed. In addition, I would also add that Mr. Lamberth is seeking two other items of discovery that could also have precluded summary judgment. One would be operational policies at other institutions, and the other, information regarding the history of rules violations at High Desert State Prison prior to the enactment of the current policy. What's your evidence that the labor dispute spawned the regulation that you don't like? Well, because the union agreement itself was not produced, there is no conclusive evidence. There is a memorandum in the record suggesting that a policy was enacted at High Desert State Prison and at others for determining prisoners' eligibility to communicate with other inmates, and that that procedural policy was motivated by labor-related considerations. I think that on a Rule 56F motion, that at least raises the possible inference that the union agreement would be relevant evidence. The district court, I would emphasize, did not even consider this ground, this ground in the Rule 56F motion, and that that failure to exercise discretion, simply ignoring the requests in a pending 56F motion. Scalia. How do we know that, counsel, I understand that every single high-security prison in California, except this one prison, permits mail from inmate to inmate, regardless of whether they're related or who they are. The warden in this case said, no, I'm not going to follow what all the rest of the prisoners' wardens do. Now, what makes this prison different than all the other prisons in California? I don't know, Your Honor, and that your question goes precisely to the need to discover correspondence policies at other institutions. Was there any reason given when the warden formulated this policy? Was there any record to indicate why his prison is different than all other prisons? I believe the warden just asserted the unique security considerations at High Desert generally, but I'm not aware of any particular considerations unique to that prison that would not be present at other California institutions. And I believe that that goes to the reasonableness of the policy and to whether it's an exaggerated response. And again, for that reason, the discovery request that Mr. Lamberth sought and was precluded from obtaining prior to the premature entry of summary judgment may well have precluded summary judgment in this case. Well, with the 56-F, whenever a judge gets one, he asks himself two questions. Is there any reason why the party making the 56-F motion couldn't have gotten this in a timely way? And is it important enough to further delay the proceeding? And it seems like the answers to both questions here would be no. I respectfully disagree, Your Honor. First of all, I don't believe that the district court did ask itself that question because I believe that it ignored several items of pending discovery. Second of all, Mr. Lamberth, on, I believe, April 16th ---- You know it ignored him. I mean, a judge doesn't have to talk about everything that he thinks about. He can read the papers and make decisions adverse to you. And it doesn't mean he ignored your arguments. It just means ruled against him. Well, he certainly provided no written or oral basis for this Court's review to show that he did consider the requests. As for Mr. Lamberth's diligence in obtaining the discovery, he sent counsel for defendants a letter specifically outlining the discovery disputes, asked counsel for the defendants to respond within 30 days. Instead, within a couple of weeks of that, counsel for the defendants filed a summary judgment motion. That is what necessitated the Rule 56-F request by Mr. Lamberth in order to continue consideration of the summary judgment motion until the discovery disputes that he had been legitimately pursuing and diligently pursuing before could be resolved. So I do believe that, first of all, the district court did not consider the discovery request. Second of all, if it had, it would have concluded that Mr. Lamberth diligently pursued the available discovery. I don't know about that. It looked like the most routine sort of response to discovery. They give you some of the stuff you ask for, and on others they have various objections. And then you make a motion to compel. Which is what Mr. Lamberth did. And then the judge decides whether to delay proceedings. Mr. Lamberth made a motion to compel, and the district court denied the 56-F motion, again, without considering the specific items of discovery that he sought, and contrary to the procedure that the district court judge or, excuse me, the magistrate judge himself laid out at the beginning of the case for avoiding waiver of summary judgment. Oh, incidentally, on one other point you made, didn't we specifically hold in our en banc decision in Rand, I think it was en banc, yes, it was, that Rand error can be harmless? The as Your Honor pointed out in dissent in the Rand case. I'm happy with Rand, but you know that. As Your Honor pointed out in the dissent in the Rand case, the majority's opinion appears somewhat internally inconsistent on that, but the majority did say that harmless error would be appropriate only in the most unusual case, and the sort of harmless error that the majority was discussing in Rand was a procedural sort of harmless error. Is there evidence in the record that makes it clear that there was no procedural harm, that the litigant knew what was required of him despite the fair notice warning? There is no such evidence here. In fact, Mr. Lamberth followed the district court's instructions to the letter and was penalized for that by being treated as having waived opposition to summary judgment. If the Court has no further questions, I see my time has expired. Roberts. Thank you, counsel. Thank you. Good morning. My name is John Riches. I'm a deputy attorney general from Sacramento. I represent the appellees in this matter. As the Court has indicated here, the first issue is whether or not the district court abused his discretion in denying Plaintiff's Rule 56F motion and his request for a continuance. To address the three items of evidence that he sought first, first was the union contract. The problem with the this particular union contract is twofold. First, the contract itself was dated February 4th, 2000. The revision of the correspondence policy was in November of 1999. In other words, the union contract postdates the policy change, and in that ---in our view, that could be hardly be a pretext for this particular correspondence policy change. Prisoners have modified First Amendment rights? Prisoner have. Excuse me. Did you say modified? I said, do prisoners in the California prisons have First Amendment rights? The prisoners have First Amendment rights so long as it is not inconsistent with the legitimate correctional goal of safety and security of the institution. Modified First Amendment rights. Yes. Now, why would one prison treat their prisoners different than all the other prisons  Well, as Lamberth noted --- I'm sorry, Judge. Centennial, the prison where the correspondent or inmate Bong is located, they also changed their regulations to be consistent with High Desert's. They did so about a year later. What was interesting and significant about High Desert was, first of all, it only became operational in 1995. So at the point in time that the policy was revised, the prison had been in operation for only four years. Secondly, in 1999, a series of violent and disrupted inmate riots commenced. And that the prison operated under two different states of emergencies and modified programming for at least a three- to five-year period. High Desert was extremely dangerous at this point in time. When a prison warden attempts to modify or eliminate constitutional rights of its prisoners, is there an obligation to explain thoroughly and legally why? The obligation by the warden? Yeah. Or must the prisoner have the burden of proving the infringement and the reason why it was infringed? What duty does a warden have to explain why he violated constitutional rights of his prisoners? Well, sir, that presupposes that there's a violation of the constitutional rights first. And in this particular instance, the warden does not have to show that there is a prior problem that has actually occurred. The warden has to show that he has a reasonable, good-faith belief that this policy will advance the institutional safety and security. The extent to which the duty of the warden to explain to whom? Does he have to explain it to the inmate? No, he does not. Does he have to explain it to the court when they're sued? Yes, he does. And that's what we did in this case with Warden Reynolds' declaration. Is that the explanation, if there was that explanation in this case, subject to judicial review by Federal courts? Certainly. That's the Turner v. Safely analysis. And what burden — what's our burden, then, in reviewing the reasons why the warden violated, took away constitutional rights? The test is whether or not the restriction is reasonably related to legitimate correctional goals of the institution, in this instance, safety and security. And how do we know that? How do we know that? By just our reading newspapers? Or must there be some evidence in the record to indicate that? In this particular instance, we submitted a declaration. I cannot hear you. I'm sorry. In this instance, we submitted a declaration from Warden Reynolds, who made the decision. It is in our excerpts of record. And in that declaration, he detailed the reasons, the safety and security reasons that he had. First, was that there are gang problems. Secondly, that inmate communications can result to planning assaults and other victimization of inmates. And the third instance was possible escapes. We must give complete deference to what the warden says? No, sir. You must give due deference to what the warden says. Yeah. Well, we give due deference to anybody who testifies in court. But why? Is the warden any different than anybody else? The Supreme Court said so in Turner v. Safely and in Thornburg, sir. OK. So how do you handle it when somebody comes along and says the warden has misrepresented the real reasons that we're able to show that there's another reason that promoted this, and it has nothing to do with security or safety? Well, in this particular case, that's the other problem with their argument on the union contract. The fundamental flaw there is the assumption that the allocation of labor resources is mutually exclusive from prison security. It's not. Prison the allocation of labor resources is a component of prison security. As Judge Kleinfeld was saying earlier, what happens if you have to put all of your correctional staff on reviewing inmate correspondence? Who's going to be out on the yard to keep the inmates from getting into mischief? That's the problem that we have here. We have a limited amount of resources. And we – and that's how we've answered the question. There were two other items that the plaintiff raised claiming that created a disputed fact that the judge should have considered. The one was specifically addressed in the order denying the request for continuance, and that's the other correspondence policies. We say that's irrelevant. As a matter of law, the – each warden has its own rights to create their own regulations. And the inmate rules violations themselves wouldn't have told anything because, as I mentioned earlier, High Desert was – had just gotten underway. The prison itself had only had a four-year history at the time this had come up. And this was an effort by the court – or by the warden to preclude future problems. In the couple of minutes I have left, I'd like to talk about the fair notice requirement under Rand. The first point is that the notice that was given in this matter is the form notice used by all of the judges in the Eastern District in Sacramento, and the notice is substantially similar to the notice used by all of the district courts in Fresno, in the Eastern District. I believe that this notice satisfies the Rand requirements. It is an ordinary, understandable language. It informs the pro se plaintiff what's going to happen if he doesn't pose the summary judgment. But most importantly here, the language that the appellant and the plaintiff relies on deals with the court's option to treat a non-opposition as a waiver of opposition. In this particular case, the district court did not treat Lambert's failure to file an opposition as a waiver. The district court went on in its findings and recommendations to treat this matter on the merits and held that the Correspondent's policy was reasonably related to the institution's legitimate correctional goal of prison security. Unless there are any more questions, the State would submit. Thank you, counsel. Thank you. I think we went through your time, but go ahead and take another 30 seconds if you like. Thank you, Your Honor. Just a few quick points. First of all, as to the union contract post-dating the Correspondent's policy, that's true. The union contract does post-date the policy by about three months, but they're close enough in times that the union contract could conceivably refer to the policy enacted at High Desert State Prison just a few months earlier. Well, under Frost, don't we have to ask if the common-sense connection is severed by whatever it is you might be able to prove, and if not, you lose? And it doesn't seem that it is. As pointed out by the other side, there's no mutual exclusivity between staffing and prison security to begin with. I would submit that there may not be such a mutual exclusivity. It may be that staffing is a legitimate security concern, but it's not the one asserted on this record. Even the one that's the one that's, well, even if it is a labor problem, that doesn't necessarily sever the common-sense connection between the regulation and the interest. If it's a labor problem, then that would show that the defendants are asserting inconsistent or at least different security considerations versus labor considerations at different points in the litigation. And that inconsistency goes to their credibility and goes to the common-sense connection. It seems like you're raising it to too high a level of generality when you talk about labor problem. It was a more specific problem. The time that it takes guards to read letters, not something like the guards don't like doing it, but rather the time that it takes guards to read letters. That's different from some other possible labor problems. And in fact, as I recall, it's the identical labor problem that the Supreme Court considered in Turner v. Safley. And they said, yep, that's a good reason for the limitation on prisoner correspondence. Well, Your Honor, I think Turner v. Safley is distinguishable on several grounds. First of all, the Supreme Court repeatedly emphasized in that case that it was evaluating the regulation based on a full trial record. And based on that trial record, it concluded that the regulation was promulgated for the sorts of security concerns related to gang violence as opposed to not the court did not speak as specifically of labor considerations. In addition, the court in Safley noted that not all prisons — I'm sorry, excuse me — that all prisons in Missouri were subject to the same policy, whereas here, as Judge Ferguson has pointed out in questioning today, there is at least an allegation that high desert state prison is unique among California prisons in using this policy. I would submit that Turner is distinguishable because of the full record that Justice O'Connor's opinion for the court carefully analyzed there. And here, the district court, through the two procedural errors that I pointed out, precluded such a record from being developed. Roberts. Thank you, counsel. Thank you. Lamberth v. Camber is submitted. Portali v. City of Stockton was dismissed by stipulation of the parties. Salazar v. Gutierrez is submitted. And that leaves Natural Resources Defense Counsel v. State Water Contractors. Do you want to go ahead or recess? I'm fine. Do you want to go ahead or recess? I'm fine. We'll go ahead with it.
judges: Ferguson, Trott, Kleinfeld